# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KIRBY MILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 2395 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| SGT. MARK McNAMARA, LT. M. RYAN, ) | |
| ANTHONY SUSNIS, DET. JONATHAN ) | |
| HARMENING, BRIAN WALSH, TIM WALSH, ) | |
| and the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Kirby Miles brought suit under 42 U.S.C. § 1983 and various Illinois state statutes against Defendants Brian Walsh and his father Tim Walsh (together, "the Walshes"), Chicago police officers Sergeant Mark McNamara, Lieutenant M. Ryan, Anthony Susnis, Detective Jonathan Harmening, other unknown officers, and the City of Chicago (together, "defendants") for false arrest, failure to intervene, denial of due process rights, malicious prosecution and conspiracy. Pending before the court is the Walshes' motion to dismiss claims against them. For the following reasons, the court determines that Miles has not asserted any violation of his federal constitutional rights against any of the defendants. The Walshes' motion to dismiss is granted and this entire suit is dismissed for lack of supplemental jurisdiction over the state law claims.[1]

---

[1] The court has jurisdiction under 28 U.S.C. § 1331, § 1343, and § 1367. Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to this claim occurred in this district.

1

# BACKGROUND[2]

On June 26, 2011, Miles and Brian Walsh were each driving in the same direction on Western Avenue in Chicago. Miles was in the right lane and Brian Walsh was in the left lane about 15 feet ahead of Miles. Brian Walsh turned into an empty parking lot on the right side of the street, cutting off Miles. Miles then pulled into the same parking lot, exited his car, and walked over to Brian Walsh's car. He proceeded to give the "much younger" Brian Walsh a "high volume lecture" about "proper driving." (Dkt. 15, Amended Complaint ("Am. Compl.") ¶¶ 16-17.)

After the encounter, Brian called family friends employed by the Chicago Police Department ("CPD") and reported the incident. He also told his father, Tim Walsh, about what had transpired. Tim Walsh, a Chicago firefighter, "recruited" his "friends and/or acquaintances" within the CPD to help. (*Id.* ¶ 19.) CPD employees visited the Walshes' home on or about June 28, 2011, presenting Brian Walsh with a photo array of suspects.[3] Brian Walsh implicated Miles, who was arrested on September 8, 2011, despite defendant officers' possession of a video that allegedly "absolved Plaintiff of any criminal culpability." (*Id.* ¶ 20.) He was indicted for one count of attempted robbery, two counts of aggravated battery in a public place, and one count of unlawful restraint. Following a bench trial in March 2012, Miles was found not guilty of those three offenses but was found guilty of reckless conduct, a misdemeanor that the criminal

---

[2] The facts in the background section are taken from Miles' amended complaint and the court draws all reasonable inferences in Miles' favor. *See Virnich* v. *Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[3] Miles asserts this photo array was created by defendants "under false pretenses, for Brian to implicate the Plaintiff," but does not elaborate on what was false about it. (Am. Compl. ¶ 19.)

court judge explained was a lesser included offense of the other crimes charged.[4] (Dkt. 18, Ex. 1; dkt. 24 at 4; dkt. 26 at 9.) Miles was fined $200, placed on court supervision for 18 months, and required to take anger management classes. (Dkt. 18, Ex. 1 at 3.)

Miles brought suit about a year later against the Walshes, the CPD officers he alleges were involved in his arrest, unknown officers, and the City of Chicago, and filed an amended complaint on June 7, 2013. (Dkt. 15.) Count I alleges false arrest in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Count II alleges failure to intervene against McNamara, Ryan, and unknown officers. Count III alleges that defendants violated Miles' due process rights to a fair trial under the Fifth, Sixth, and Fourteenth Amendments. Count IV alleges a state-law claim for malicious prosecution. Count V alleges a claim against Chicago for the payment of judgment under 745 Ill. Comp. Stat. 10/9-102. Count VI alleges conspiracy under 42 U.S.C. § 1983 against all defendants. The Walshes have moved to dismiss all claims against them. (Dkt. 18.)

---

[4] Miles did not attach his arrest record to his amended complaint, nor did he inform the court that he was found guilty of reckless conduct. Instead, the Walshes attached Miles' Certified Statement of Conviction/Disposition to their motion to dismiss. (Dkt. 18, Ex. 1.) The court may take judicial notice of this public record, which is central to Miles' claim, in deciding the pending motion and need not convert the motion into one for summary judgment. *See Ennenga* v. *Starns,* 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."); *see also Rosenblum* v. *Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.") (quoting *Wright* v. *Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).
  The court also notes that Miles stated in his response brief that the state trial court judge "found Plaintiff guilty of the offense of reckless conduct, asserting that it was a lesser-included offense of Count 4: unlawful restraint (Plaintiff was found not guilty of unlawful restraint, the charged offense)." (Dkt. 24 at 4.) Defendants state merely that Miles "admits he was convicted of Reckless Conduct, a lesser included offense of the other charges brought against him." (Dkt. 26 at 9.) The court can find no authority confirming that reckless conduct is a lesser included offense of unlawful restraint.

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.* 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page,* 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

**ANALYSIS**

**I.      Miles' Federal Claims under 42 U.S.C. § 1983**

To make out a claim under 42 U.S.C. § 1983, Miles must allege he was deprived of a federal right, privilege, or immunity by a person acting under color of state law. *See West* v. *Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *see also Adickes* v. *S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Miles does not argue that the Walshes themselves acted under color of law. Instead, he argues that they conspired with state actors to violate his constitutional rights. A private party may be held liable under § 1983 "by engaging in joint action with state officials to deprive a person of a federally protected right."

*Hughes* v. *Meyer,* 880 F.2d 967, 972 (7th Cir. 1989) (citations omitted). "[T]o establish § 1983 liability through a conspiracy theory, 'a plaintiff must demonstrate that: (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents.'" *Lewis* v. *Mills,* 677 F.3d 324, 333 (7th Cir. 2012) (brackets in original) (quoting *Reynolds v. Jamison,* 488 F.3d 756, 764 (7th Cir. 2007)).

The conspiracy itself is not an independent basis of § 1983 liability. There must be an underlying constitutional injury or the attendant conspiracy claim necessarily fails. *See Hill* v. *City of Chicago,* No. 06 C 6772, 2009 WL 174994, at *9 (N.D. Ill. Jan. 26, 2009) (citing *Reynolds*, 488 F.3d at 764). "As such, if a plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim necessarily fails." *Id.* (citing *Cefalu* v. *Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)). "A plaintiff alleging a § 1983 conspiracy must indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with.'" *Drager* v. *Vill. of Bellwood*, No. 12 C 9569, 2013 WL 4501413, at *9 (N.D. Ill. Aug. 22, 2013) (quoting *Cooney* v. *Casady*, 652 F. Supp. 2d 948, 957 (N.D. Ill. 2009)).

The Walshes do not contest that Miles alleges sufficient information to find that a conspiracy existed between the Walshes and the other defendants. He alleges that the Walshes contacted their acquaintances at the CPD immediately following Brian Walsh's encounter with Miles. (Am. Compl. ¶¶ 18-19.) The purpose of the alleged conspiracy was to "seek revenge" against Miles. (*Id.* ¶ 19.) He alleges how defendants carried out the conspiracy (by way of the photo array and then by charging Miles). (*Id.* ¶¶ 19-20.) This was enough to put defendants on notice. The next disputed issue is whether Miles' complaint states a claim for any underlying constitutional violation.

5

### A. Count I: False Arrest

Miles argues his constitutional rights were violated because there was no probable cause for his arrest. The Walshes argue that Miles' false arrest claim against them fails because there was probable cause to arrest Miles.

"An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." *Kelley* v. *Myler,* 149 F.3d 641, 646 (7th Cir. 1998) (citing *Jones* v. *Webb*, 45 F.3d 178, 181 (7th Cir. 1995)). Police officers have probable cause to make an arrest when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Mustafa* v. *City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley*, 149 F.3d at 646). Probable cause is evaluated "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer*—seeing what he saw, hearing what he heard." *Mahoney* v. *Kesery,* 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original). The court's inquiry is limited to the information known to the officers at the time of arrest. *Mucha* v. *Vill. of Oak Brook,* 650 F.3d 1053, 1057 (7th Cir. 2011). "[P]robable cause demands even less than probability . . . ; it requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Woods* v. *City of Chicago,* 234 F.3d 979, 996 (7th Cir. 2000) (internal citations and quotations omitted); *see also Maryland* v. *Pringle,* 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.").

"Probable cause is an absolute bar to a § 1983 claim for false arrest." *McBride* v. *Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Moreover, "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes* v. *Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck* v. *Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004); *Pourghoraishi* v. *Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006); *see also Mustafa*, 442 F.3d at 547. It is not necessary for a police officer to witness a crime being committed in order to have probable cause to arrest. "So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent." *Jenkins* v. *Keating,* 147 F.3d 577, 585 (7th Cir. 1998); *see also Mustafa*, 442 F.3d at 548.

Miles argues there was no probable cause to arrest him and that, in any case, whether there was probable cause is a fact question that should be answered by the jury. The Walshes argue that that there was probable cause to arrest him for the misdemeanor[5] of disorderly conduct, 720 Ill. Comp. Stat. 5/26-1(a)(1) ("A person commits disorderly conduct when he or she knowingly: (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace[.]").[6] The Illinois Supreme Court has explained that the disorderly conduct statute "is intended to guard against an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." *People* v. *Davis,* 413 N.E.2d 413, 415, 82 Ill. 2d 534, 45 Ill. Dec. 935 (1980) (internal quotation marks omitted).

---

[5] The Seventh Circuit has held that a warrantless arrest for a misdemeanor not witnessed by the arresting officer does not violate the Fourth Amendment. *See Woods*, 234 F.3d at 995.

[6] Miles was not charged with disorderly conduct but, again, probable cause to arrest for *any* crime is sufficient.

7

"The breach-of-the-peace element requires nothing more than the unreasonable harassment of a single person, even in a nonpublic location." *Maniscalco* v. *Simon*, 712 F.3d 1139, 1144 (7th Cir. 2013) (quoting *Davis*, 413 N.E.2d at 415-16). "Whether these elements are satisfied depends heavily on 'the conduct's unreasonableness in relation to the surrounding circumstances.'" *Id.* (quoting *Biddle* v. *Martin,* 992 F.2d 673, 677 (7th Cir. 1993)). For example, in *Brown* v. *Village of Romeoville, Illinois,* 407 F. App'x 56 (7th Cir. 2011), the Seventh Circuit explained that the police had probable cause to arrest the defendant for disorderly conduct when he "stopped his car abruptly, exited his car, and began to approach the women while swearing" and the women had called 911 and said they feared for their safety. *Id.* at 57-58 (citations omitted).

While it is true that "[g]enerally, whether there is probable cause is a jury question," the court can dismiss a complaint where lack of probable cause is apparent on its face. *Nieman* v. *Keane*, 232 F.3d 577, 580 (7th Cir. 2000); *see also Van Thuy Vong* v. *True Religion Sales LLC*, No. 12 C 2289, 2012 WL 6188473, at *3 (N.D. Ill. Dec. 12, 2012) (granting motion to dismiss false arrest claim where complaint contained "affirmative allegations" establishing probable cause to arrest). Here, taking all allegations in the complaint as true and viewing the facts in the light most favorable to Miles, he did not sufficiently allege information that indicates CPD officers lacked probable cause to arrest him. Miles states that he followed Brian Walsh into an empty parking lot, approached Brian Walsh's car, and gave him a "high volume lecture." (Am. Compl. ¶ 17.) Brian Walsh was a "much younger" man than Miles[7] and he felt compelled to contact CPD employees immediately to report the incident. (*Id.* ¶¶ 16, 18.) Upon hearing these facts and after Brian Walsh correctly picking Miles out of a photo array, CPD officers had probable cause to arrest Miles. *See Maniscalco*, 712 F.3d at 1144 ("Victim statements like these

---

[7] The Walshes assert in their motion to dismiss that Brian Walsh was actually just 17 at the time of the incident and still in high school. (Dkt. 18 at 2 n.2.)

are ordinarily sufficient to establish probable cause to support an arrest for disorderly conduct."). The cases on which Miles relies do not convince the court otherwise.[8] Count I of Miles' claim thus fails to allege a false arrest claim.[9]

### B. Count III: Due Process

Miles alleges in Count III of his complaint that he was deprived of "rights, privileges and immunities secured to him by the due process clause of the Fourteenth, [F]ifth, and [S]ixth

---

[8] For example, Miles relies on *People* v. *Douglas*, 331 N.E.2d 359, 29 Ill. App. 3d 738 (1975), to argue that loud or vulgar language does not threaten or provoke a breach of peace. (Dkt. 24 at 8.) But in *Douglas*, the vulgar language was not directed at a "much younger man" in a car by himself in an empty parking lot. It was instead uttered by the defendant in the presence of police and a crowd of people watching the police attempt to arrest him. *Id.* at 362-63. *Douglas* is thus distinguishable and Miles' reliance on it is unavailing.

[9] Defendants also argue that *Heck* v. *Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), bars Miles' claim. Because the court determines that there was probable cause to arrest Miles, the court need not delve into the question of whether *Heck* bars Miles' claim. The court does note, however, that the parties have elicited an interesting question of whether a conviction for a lesser-included offense of the offense charged implicates the *Heck* bar. In *Heck*, the Supreme Court explained that when a plaintiff "seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.
The Seventh Circuit has not stated whether a conviction for a lesser-included offense than the one charged means the plaintiff's § 1983 suit is *Heck*-barred. Other courts considering the issue have concluded that it is. *See, e.g., Baker* v. *Wittevrongel*, 363 F. App'x 146, 149-50 (3d Cir. 2010) (plaintiff's damages claims for malicious prosecution and conspiracy barred by *Heck* where he was acquitted by jury on armed robbery charge but convicted of lesser-included offense of theft "in the same criminal proceeding for the same criminal act"); *Nelson* v. *Greiner*, Civ. No. 13-279, 2013 WL 6036724, at *8 (D. Minn. Nov. 14, 2013) ("[T]his court is persuaded by other courts that have arrived at the common-sense conclusion that, where a plaintiff was charged criminally with one offense and subsequently convicted of a lesser-included offense, *Heck* still applies to bar[ ] claims arising from the underlying criminal act, even though the plaintiff was not convicted of the charge that he originally faced.") (citation omitted); *Mitchell* v. *Jackson*, No. 2:10-CV-13483, 2010 WL 3906304, at *2 (E.D. Mich. Sept. 30, 2010) ("Moreover, although Plaintiff was not convicted of the original assault with intent to rob while armed charge, Plaintiff's conviction on the lesser included offense of assault with intent to rob while unarmed precludes him from maintaining a § 1983 action against Defendant, because his complaint would call into question the validity of that conviction.") (citing *Barnes* v. *Wright*, 449 F.3d 709, 716-17 (6th Cir. 2006)). But because it is clear from the face of the complaint that the police had probable cause to arrest Miles, the court, like the Seventh Circuit, "need not wade deeply into this issue." *Lewis*, 677 F.3d at 333-34 (7th Cir. 2012) (declining to decide whether plaintiff's guilty plea on four misdemeanors when he was originally charged with 49 felonies implicated the *Heck* bar).

9

Amendments to the Constitution of the United States." (Am. Compl. ¶ 33.) He explains that the defendants' acts deprived him of fair criminal proceedings. These acts included

> using identification evidence derived from a suggestive photo lineup at trial, failing to disclose known exculpatory evidence, ignoring exculpatory evidence, failing to investigate actual innocence of Plaintiff, submitting false charges as contained in the criminal complaints, submitting false police reports, omitting exculpatory evidence from police reports, swearing to false statements, and otherwise acting to influence and persuade the State's Attorney to prosecute Plaintiff and to deny Plaintiff fair legal proceedings.

(*Id.* ¶ 31.) In his response brief to the Walshes' motion to dismiss, Miles divides these allegations into two categories, "fabricated evidence" and "tainted identification procedures." (Dkt. 24 at 12-15.) His complaint also seems to allege a claim for withholding of exculpatory evidence pursuant to *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

### 1. Fabricated evidence

As Judge Dow explained just last month, "Until recently, it seemed to be settled law in the Seventh Circuit that allegations of evidence fabrication do not state a cognizable due process claim." *Bianchi* v. *McQueen*, No. 12 C 364, 2014 WL 700628, at *9 (N.D. Ill. Feb. 24, 2014) (citation omitted). Instead, a plaintiff alleging that he suffered from a "deprivation of liberty from prosecution and a contrived conviction . . . deliberately obtained from the use of false evidence" had a claim for "malicious prosecution, rather than a due process violation." *McCann* v. *Mangialardi,* 337 F.3d 782, 786 (7th Cir. 2003). The existence of the common law tort of malicious prosecution in Illinois would have foreclosed Miles from bringing his fabrication allegations as a due process claim and instead he would have had to bring his claim under a state-law theory of malicious prosecution. *See Saunders* v. *City of Chicago*, Nos. 12 C 9158, 12 C 9170, 2013 WL 6009933, at *7 (N.D. Ill. Nov. 13, 2013).

But in recent Seventh Circuit decisions, the court "indicate[d] that an allegation of evidence fabrication, in fact, can support a due process claim under Section 1983." *Bianchi*, 2014 WL 700628, at *10. *See Whitlock* v. *Brueggemann*, 682 F.3d 567 (7th Cir. 2012), *interpreted in Alexander* v. *McKinney*, 692 F.3d 553 (7th Cir. 2012); *Fields* v. *Wharrie*, 740 F.3d 1107 (7th Cir. 2014)

In *Whitlock*, the Seventh Circuit held that the plaintiffs, who had been convicted and imprisoned for 17 and 21 years, respectively, made out due process violations against prosecutors and police who fabricated evidence against them. "The actions of an official who fabricates evidence that later is used to deprive someone of liberty can be both a but-for and proximate cause of the due process violation. Without the fabrication, the prosecuting attorney would have had no tainted evidence to introduce at trial." *Whitlock*, 682 F.3d at 583. If the fabricated evidence was the "crux of the case" at trial, the "plaintiff could show that the fabrication was a but-for cause of his conviction." *Id*. But in interpreting *Whitlock* later, the Seventh Circuit explained that "the alleged liberty deprivation came not from the [plaintiff's] initial [pre-trial] arrest, but from the time spent in confinement *after* arrest . . . the numerous years [the plaintiff] spent in prison after being wrongfully convicted." *McKinney*, 692 F.3d at 557. In *McKinney*, the Seventh Circuit determined that the plaintiff's claim stemmed from his arrest, as he was acquitted at trial, so that any action for that arrest had to be brought under the Fourth Amendment. *Id.* at 557-58. It also explained that the "burden of appearing in court and attending trial, in and of itself, [does not] constitute a deprivation of liberty." *Id.* at 557 n.2.

After *Whitlock* and *McKinney*, the Seventh Circuit decided *Fields*. There, a prosecutor, "acting pre-prosecution as an investigator, fabricate[d] evidence and introduce[d] the fabricated evidence at trial. The innocent victim of the fabrication [wa]s prosecuted and convicted and sent

11

to prison for 17 years." *Fields*, 740 F.3d at 1113. The Seventh Circuit held in that scenario that the prosecutor did not have prosecutorial immunity in the plaintiff's subsequent § 1983 suit for violation of his due process rights.

Here, the alleged constitutional deprivations led to Miles' conviction for a misdemeanor, and his being placed on supervision and ordered to take anger management classes. While this is arguably distinguishable from the situation in *Bianchi* or *McKinney* where there was no due process violation because the plaintiffs were acquitted, it cannot be said that Miles was deprived of his liberty in the same way as the plaintiffs in *Whitlock* and *Fields* who were all incarcerated for at least 17 years. Instead, like the plaintiff in *McKinney*, the only time Miles was incarcerated was in connection with his arrest (not any subsequent conviction). Accordingly, Miles has "not stated a violation of a clearly established constitutional right, and any evidence fabrication claim" he has must be brought "under state law." *Bianchi*, 2014 WL 700628, at *12.

Moreover, it is unclear to the court *what* evidence was fabricated that could have been detrimental to Miles. He admits in his complaint that he was the one who confronted Brian Walsh and admits to a "high volume lecture." (Am. Compl. ¶ 17.) While he argues that Brian Walsh "testified falsely" at Miles' trial (dkt. 24 at 13), this is not a case like *Fields* or *Whitlock* where false testimony and fabricated evidence led to the conviction of the *wrong* defendant. Thus, even applying the new Seventh Circuit precedents, Miles' claim for a due process violation based on fabricated evidence fails.

### 2. Tainted identification procedures

Miles argues that he was deprived of Fourteenth Amendment due process rights when the photo array used to identify Miles was introduced at trial because Brian Walsh's identification of Miles was the result of "unduly suggestive identification techniques." (Dkt. 24 at 14-15.) While

12

the Constitution "does not require that . . . photo arrays . . . meet a particular standard of quality," it does "guarantee the right to a fair trial—in this context, via the due process clause of the Fourteenth Amendment—and that right is violated if unduly suggestive identification techniques are allowed to taint the trial." *Alexander* v. *City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006) (citing *Hensley* v. *Carey*, 818 F.2d 646, 648, 650 (7th Cir. 1987); *Manson* v. *Brathwaite*, 432 U.S. 98, 113 & n.13, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)). "The *Brathwaite* standard for evaluating the admissibility of identification evidence focuses on whether the identification procedure was unduly suggestive and whether the resulting identification is reliable." *Alexander*, 433 F.3d at 555 (citing *Brathwaite*, 432 U.S. at 113-14.) In order for there to be § 1983 liability for an alleged due process violation based on a photo array, there must be "an improper identification [that] has some prejudicial impact on an accused's defense." *Hensley*, 818 F.2d at 649 (quoting *Cerbone* v. *Cnty. of Westchester*, 508 F. Supp. 780, 786 (S.D.N.Y. 1981)). For example, in *Hensley*, the plaintiff argued (albeit unsuccessfully) he had suffered a due process violation when he was detained in jail awaiting trial for 111 days for a crime he did not commit due to a prejudicial photo array. *Id.* at 650.

Here, however, Miles readily admits that he was the individual who confronted Brian Walsh and he does not specify how the photo array was unduly suggestive or explain how it was tainted. *See, e.g., Sattler* v. *Hernandez*, No. 09 C 7018, 2011 WL 3839658, at *3 (N.D. Ill. Aug. 30, 2011). In other words, he was not implicated in a crime he did not commit. Instead, he feels he was treated unfairly for confronting Brian Walsh in the parking lot. His due process claim based on the photo array thus fails.

### 3. *Brady* claim

Although Miles does not expressly say as much in his response brief (or even mention operative law), it seems possible that he is also trying to bring a claim for withholding exculpatory evidence under *Brady*. In *Brady*, the United States Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. This rule requires "the prosecutor turn over to the defense all potentially exculpatory evidence" and extends to police officers "insofar as they must turn over potentially exculpatory evidence when they turn over investigative files to the prosecution." *Harris* v. *Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007) (citation omitted); *see also Carvajal* v. *Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). "In order to bring a *Brady* claim, a plaintiff must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material, that is, there was a reasonable probability that prejudice ensued." *McKinney*, 692 F.3d at 556. Evidence is "material" under *Brady* if, had it been disclosed, it would create a reasonable probability that the result of the entire proceeding would have been different. *See Strickler* v. *Greene*, 527 U.S. 263, 289-90, 119 S. Ct. 1936, 144 L. Ed. 286 (1999); *Pecoraro* v. *Walls*, 286 F.3d 439, 443 (7th Cir. 2002).

Miles states in his complaint that defendants both failed to disclose and ignored exculpatory evidence. (Am. Compl. ¶ 31.) He states that the defendant officers "held in their possession video depicting [t]he incident complained of" but "ignored or purposely failed to view said video footage that absolved Plaintiff of any criminal culpability." (*Id.* ¶ 20.) He does not pursue this argument in his response brief, though, nor does he ever explain to the court how

this evidence would have "absolved him." As discussed throughout this opinion, Miles admits to the underlying acts in his criminal case.[10] This claim thus fails.

### C. Count II: Failure to Intervene; Count VI: § 1983 Conspiracy

Because Miles has failed to successfully allege any constitutional violations against the Walshes, his claims for failure to intervene also must be dismissed. *See Harper* v. *Albert*, 400 F.3d 1052, 1066 n.18 (7th Cir. 2005) ("[W]ithout establishing an underlying constitutional violation . . . it would be impossible for a failure to intervene claim, as a matter of law, to succeed.") (citing *Fillmore* v. *Page*, 358 F.3d 496, 506 (7th Cir. 2004)). And because Miles has stated no underlying constitutional violation, his claim of a § 1983 conspiracy fails as well. *See Hill*, 2009 WL 174994, at *9.

### CONCLUSION AND ORDER

The court's conclusion that Miles does not state a claim for any violation of his federal constitutional rights applies with equal force to the CPD officer defendants. Having determined that Miles has no federal claim against any defendant, the court declines to exercise supplemental jurisdiction over the malicious prosecution and other state law claims. See 28 U.S.C. § 1367(c).

The federal claims are dismissed with prejudice. The state law claims are dismissed without prejudice to filing in the Circuit Court of Cook County.

Date: March 11, 2014

_____
U.S. District Judge Joan H. Lefkow

---

[10] Moreover, his claim that the police "ignored or purposely failed to view said video footage" (*id.*) is unavailing. Although officers "may not ignore conclusively established evidence of the existence of an affirmative defense," the Fourth Amendment imposes no duty to investigate whether a defense is valid. *McBridle* v. *Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (citations omitted). Miles alleges that the officers did not view this video (Am. Compl. ¶ 20) but does not state they knew the video would conclusively absolve him but ignored it nonetheless.

15